UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

KAREN CUEVAS, §
      Plaintiff, §
       §
v.        §   Case # 1:18-cv-669-DB
       §
COMMISSIONER OF SOCIAL SECURITY, §   MEMORANDUM DECISION
       §   AND ORDER
      Defendant. §

## INTRODUCTION

Plaintiff Karen Cuevas ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner") that denied her application for Disability Insurance Benefits ("DIB") under Title II of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned, in accordance with a standing order (*see* ECF. No. 15).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 11, 13. Plaintiff also filed a reply. *See* ECF No. 14. For the reasons set forth below, Plaintiff's motion (ECF No.11) is **DENIED**, and the Commissioner's motion (ECF No. 13) is **GRANTED**.

## BACKGROUND

On December 2, 2014, Plaintiff filed her DIB application, alleging a disability beginning on August 1, 2013 (the disability onset date), due to: (1) right ankle flat foot deformity; (2) low back LS radiculitis: (3) medial right arch collapse tendinopathy; (4) right sided sciatica; and (5) lumbar degenerative joint disease. Transcript ("Tr.") 218. Plaintiff's claim was initially denied on April 28, 2015 (Tr. 108), after which she requested an administrative hearing. Plaintiff's hearing

was held on April 14, 2017. Administrative Law Judge Michael Carr (the "ALJ") presided over the hearing via video from Alexandria, Virginia. Tr. 14-20. Plaintiff appeared and testified from Buffalo, New York, and was represented by Diane S. Hinman, an attorney. Tr. 37-88. Dian L. Haller, a vocational expert ("VE") also appeared and testified at the hearing. *Id*.

The ALJ issued an unfavorable decision on June 12, 2017, finding that Plaintiff was not disabled under sections 216(i) and 223(d) of the Act. Tr. 14-20. On April 25, 2018, the Appeals Council modified Plaintiff's last date of insurance from March 31, 2015, to June 30, 2015, and then denied Plaintiff's request for further review. Tr. 1-10. The ALJ's decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II. The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71

(1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id.* § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national

economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in his June 12, 2017 decision:

1. The claimant last met the insured status requirements of the Social Security Act on March 31, 2015;[1]

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of August 1, 2013 through her date last insured of March 31, 2015 (20 CFR 404.1571, *et seq.*);

3. Through the date last insured, the claimant had the following severe impairments: obesity, right ankle and right foot osteoarthritis, degenerative changes lumbar spine (20 CFR 404.1520(c));

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526);

5. Through the date last insured, the claimant had the residual functional capacity to perform light work[2] as defined in 20 CFR 404.1567(b) except can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; cannot climb ladders, ropes, or scaffolds; no unprotected heights, no uneven terrain; can occasionally operate a motor vehicle for commercial purposes;

6. Through the date last insured, the claimant was capable of performing past relevant work as a social services aide. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565);

7. The claimant was not under a disability, as defined in the Social Security Act, at any time from August 1, 2013, the alleged onset date, through March 31, 2015, the date last insured (20 CFR 404.1520(1)).

---

[1] As explained above, the Appeals Council modified Plaintiff's last date insured to June 30, 2015.
[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

Tr. at 14-20.

Accordingly, the ALJ determined that, for a period of disability and disability insurance benefits filed on December 2, 2014, the claimant was not disabled under sections 216(i) and 223(d) of the Social Security Act through March 31, 2015. *Id*. at 20.

**ANALYSIS**

Plaintiff argues that the ALJ: (1) failed to consider her chronic venous insufficiency and limiting effects of edema at step two, resulting in an RFC that was not supported by substantial evidence; (2) improperly evaluated and diminished medical opinions and failed to give good reasons for doing so; and (3) failed to properly determine Plaintiff's credibility, or alternatively, misconstrued Plaintiff's activities and evidence. *See* ECF No. 11-1 at 2.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir.2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

**I.   The ALJ Properly Considered Plaintiff's Chronic Venous Insufficiency.**

Plaintiff argues the ALJ erred in failing to consider evidence directly related to her impairment of chronic venous insufficiency[3] at step two, and as a result, failed to consider the combined effect(s) of her impairments. *See* ECF No. 11-1 at 14. In response, the Commissioner points out that Plaintiff did not raise this condition in her disability report, in her function report,

---

[3] Venous insufficiency refers to inadequacy of the venous valves and impairment of the venous return from the lower limbs characterized by edema, warmth, and erythema, particularly of the lower third of the extremity. *See* DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 945 (32nd ed. 2012) ("DORLAND'S").

5

at her consultative examination, or at her administrative hearing. *See* ECF No. 13-1 at 10 (citing Tr. 42-72, 218, 245, 317, 319). Although the ALJ has an affirmative duty to develop the record (*see* 42 U.S.C. § 423(d)(5)(B); 20 C.F.R. § 416.912(d)(2)), "[t]he ALJ does not need to attempt to obtain every extant record of the claimant's doctor visits when the information on the record is otherwise sufficient to make a determination, and need not request more detailed information from the treating physician if the physician's report is a sufficient basis on which to conclude that the claimant is not disabled." *Harvey v. Astrue*, No. 5:05-CV-1094 NAM, 2008 WL 4517809, at *15 (N.D.N.Y. Sept. 29, 2008) (citing *Rosa*, 168 F.3d at 79). Furthermore, the failure to present an argument to the ALJ constitutes waiver of such, especially when Plaintiff is represented by counsel. *See Harvey*, 2008 WL 4517809, at *15 (citing *Union Tank Car Co., Inc. v. Occupational Safety & Health Admin.*, 192 F.3d 701, 707 (7th Cir.1999) (holding that the failure to present an argument to the ALJ constitutes waiver of the right to raise it on appeal)). Accordingly, the Court finds that this *post hoc* argument was raised too late, and in any event, for the reasons noted below, is of no consequence.

Medical records submitted by Plaintiff reveal only isolated episodes of bilateral lower extremity edema. Although records reflect she was given a prescription for compression stockings, no other significant findings were recorded. Tr. 323, 324, 325, 333, 356. While chronic venous insufficiency is documented at times in the records of primary care physician David Newberger, M.D. ("Dr. Newberger"), it was noted to improve with compression stockings. Tr. 327, 329, 335, 339. Rather than overlooking this evidence, the ALJ explicitly discussed Plaintiff's swelling and use of compression stockings. Tr. 18-19. Plaintiff fails to acknowledge that discussion or explain how the condition merited further consideration. The record documents no further treatment for

the condition during the relevant period aside from continuing the prescription for compression stockings. Tr. 327, 329, 335-36, 339.

During Plaintiff's consultative exam with Samuel Balderman, M.D. ("Dr. Balderman"), a 2+ pitting edema[4] in the right ankle and a 1+ in the left ankle was noted, but no significant varicosities were noted. Tr. 319. Treatment notes do not mention incompetency or obstruction of the deep venous system, and there is no description of "extensive brawny edema" or ulceration. *See Lamond v. Astrue*, 440 F. App'x 17, 20 (2d Cir. 2011) (quoting 20 C.F.R. Part 404, Subpart P, App'x 1, § 4.00(G)(3)). Additionally, aside from one treatment record wherein Dr. Newberger noted cardiovascular edema but normal heart rate and rhythm (Tr 329), no other cardiac related problems were ever documented. In any event, the failure to list an impairment as severe is harmless error if the ALJ ultimately considered such with the RFC, as the ALJ did in this case. *See Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (citing *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir.2010) (finding harmless error where the ALJ's consideration of a doctor's report would not have changed the ALJ's adverse determination)).

Finally, while Plaintiff's argument ostensibly concerns the ALJ's alleged failure to consider chronic venous insufficiency, Plaintiff primarily supports her position with a lengthy recitation of the evidence concerning her right ankle, right foot, and back conditions. *See* ECF No. 11-1 at 15-19. However, the ALJ thoroughly considered those conditions, finding that the record supported the severe impairments of right ankle and right foot osteoarthritis and degenerative changes of the lumbar spine, as well as obesity. Tr. 16. Then, accounting for the record as a whole, the ALJ determined an RFC limiting Plaintiff to a range of light work under which she could

---

[4] "Edema" is "the presence of abnormally large amounts of fluid in the intercellular tissue spaces of the body." DORLAND'S 593. "Pitting edema" is "edema in which the tissues show prolonged existence of the pits produced by pressure." *Id*.

7

occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; never climb ladders, ropes, or scaffolds; tolerate no exposure to unprotected heights or uneven terrain; and occasionally operate a motor vehicle for commercial purposes. Tr. 17. As the Appeals Council noted, the ALJ took into account her right ankle swelling in his RFC. Tr. 5. This was the same swelling noted in Dr. Balderman's consultative exam.

Having reviewed the medical records, the Court finds no other testing or treatment for venous insufficiency, except the prescription from Dr. Newberger for compression stockings as noted above. In fact, there are no subjective complaints by Plaintiff to any health care provider concerning any physical symptoms related to venous insufficiency. Accordingly, Plaintiff's first point of error is overruled.

## II. The ALJ Properly Weighed The Medical Evidence.

Plaintiff's second point of error challenges the ALJ's evaluation of the opinion evidence. *See* ECF No. 11-1 at 20-27. Plaintiff contends the ALJ "improperly selectively read, and mischaracterized evidence" when he considered the medical opinions of Dr. Newberger, Dr. Balderman, and orthopedist Christopher Ritter, M.D. ("Dr. Ritter"). *See* ECF No. 11-1 at 20. Plaintiff argues that, contrary to the ALJ's finding, the effects of her disorders would preclude her from engaging in sustained competitive work on a full-time basis. *Id.*

With respect to Dr. Newberger, the ALJ discounted Dr. Newberger's April 2017 treating source statement, noting it was entitled to "little weight" because it was significantly outside the relevant period and was an evaluation following a motor vehicle accident. Tr. 19, 400-01. Dr. Newberger's opinion pertained to Plaintiff's condition some two years after her date last insured, as the ALJ found. Tr. 19. On April 4, 2017, the same day he provided the opinion, Dr. Newberger, noted that in August 2016 (after the expiration of her insured status), Plaintiff had been in a car accident that resulted in a right knee contusion leading to right knee patellofemoral pain syndrome, and a lower back injury with

8

L5-S1 disc herniation. Tr. 396. Dr Newberger noted that these two injuries in combination with her right ankle problem caused Plaintiff to seek Social Security disability. *Id*. A review of Dr. Newberger's records during the relevant period notes no restrictive limitations on Plaintiff's functional capacity other than shortly after her ankle injury.

The opinions of Plaintiff's treating physicians should be given "controlling weight" if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in [the] case record," 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). However, a treating physician's opinion is not afforded controlling weight when the opinion is inconsistent with other substantial evidence in the record, such as the opinions of other medical experts. 20 C.F.R. § 404.1527(d)(2); *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999). If the ALJ gives the treating physician's opinion less than controlling weight, he must provide good reasons for doing so. *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998).

If not afforded controlling weight, a treating physician's opinion is given weight according to a non-exhaustive list of enumerated factors, including (i) the frequency of examinations and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the physician's opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the physician has a relevant specialty. 20 C.F.R. §§ 404.1527(c) (2), 416.927(c)(2); *see Clark*, 143 F.3d at 118; *Marquez v. Colvin*, No. 12 CIV. 6819 PKC, 2013 WL 5568718, at *9 (S.D.N.Y. Oct. 9, 2013). In rejecting a treating physician's opinion, an ALJ need not expressly enumerate each factor considered if the ALJ's reasoning and adherence to the treating physician rule is clear. *See, e.g., Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013).

As long as the ALJ is careful to explain his decision, he is entitled to reject portions of a medical opinion that conflict with other evidence in the record. *See Raymer v. Colvin*, No. 14-CV-6009P, 2015 WL 5032669, at *5 (W.D.N.Y. Aug. 25, 2015) ("an ALJ who chooses to adopt only portions of a medical opinion must explain his or her decision to reject the remaining portions"). The record here reflects that the ALJ appropriately discussed these factors in his assessment of Dr. Newberger's opinions. As the ALJ observed, Dr. Newberger provided no explanation for the limitations he assessed, writing only "see progress note." Tr. 19, 400-01. Dr. Newberger's progress note from the same day he completed the form relates almost entirely to the knee and back injuries Plaintiff suffered in the August 2016 car accident. Tr. 396-99. While Dr. Newberger listed a number of diagnoses under the heading "active problems," his assessment and documented treatment on the day of the visit was limited to Plaintiff's lumbar disc herniation and patellofemoral disorder of the right knee caused by her August 2016 car accident (Tr. 396, 399), neither of which was in existence during the relevant period.

Plaintiff also argues the ALJ improperly rejected Dr. Newberger's April 2017 opinion because the opinion stated that Plaintiff had limitations from ankle/foot problems since 2013, and because he had treated Plaintiff for conditions related to ongoing right foot/ankle problems, lower extremity edema, and lumbar DDD and/or joint pain. *See* ECF No. 11-1 at 24 (citing Tr. 396-401). However, Plaintiff's attempt to separate Dr. Newberger's opinion from his contemporaneous treatment notes, merely based on his statement that Plaintiff's foot problems began in 2013, is unavailing. As recounted above, the record contains only sparse references to Plaintiff's chronic venous insufficiency, and the record reflects that the condition improved with compression stockings. As also discussed above, the ALJ's light work RFC and associated limitation takes into account Plaintiff's foot problems. Tr. 17-10. Thus, the evidence presented reasonably supports the ALJ's RFC finding, which should be upheld regardless of whether a court, having heard the same evidence *de novo*, might

have come to a different conclusion. *See, e.g.*, *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir.1982); *Rivera v. Harris*, 623 F.2d 212, 216 (2d Cir.1980); *Schacht v. Barnhart*, No. CIV.3:02 CV 1483 DJS, 2004 WL 2915310, at *7 (D. Conn. Dec. 17, 2004).

Furthermore, Plaintiff has the burden to prove that her conditions were disabling prior to the expiration of her Title II insured status. *See* 20 C.F.R. § 404.101. Evidence that she acquired a disabling condition after the expiration of her insured status cannot meet this requirement. *See Cassera v. Sec'y Health & Human Servs.*, 104 F.3d 355, 1996 WL 734048, at *2 (2d Cir. 1996); *see also Arnone v. Bowen*, 882 F.2d 34, 41 (2d Cir. 1989). In this case, Dr. Newberger's April 2017 opinion relates to alleged disabling conditions from Plaintiff's August 2016 car accident—after the expiration of her insured status. Dr. Newberger's conclusory notation that Plaintiff had foot problems beginning in 2013 (Tr. 401) establishes nothing beyond what the ALJ already noted with respect to Plaintiff's right ankle and right foot osteoarthritis impairments, and which the ALJ appropriately accounted for in the RFC. Tr. 17-19. For all these reasons, the Court finds the ALJ properly determined that Dr. Newberger's April 2017 opinion was entitled to little weight.

Next, Plaintiff takes issue with the ALJ's assignment of "some weight" to the March 2015 consultative examination report of Dr. Balderman. Tr. 19. The ALJ found Dr. Balderman's opinion that Plaintiff had mild to moderate limitation in prolonged walking and repetitive climbing due to right ankle pain, and a mild limitation in repetitive bending and lifting, was generally consistent with internal findings and imaging of Plaintiff's right ankle. Tr. 19, 319. Noting that Dr. Balderman examined Plaintiff toward the end of the relevant period, the ALJ assigned the opinion some weight. Tr. 19. The Court finds these are proper factors for the ALJ to consider, and the ALJ's assessment is well supported by the record. *See* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that opinion.").

The ALJ noted that an MRI of Plaintiff's right ankle about six months after she sprained it was "essentially normal." Tr. 18, 303. On examination, Dr. Balderman noted a normal gait and stance; an inability to walk on heels and toes; no need for help changing for the examination or getting on and off the examination table; an ability to rise from a chair without difficulty; and a need for a cane only for heavy terrain. Tr. 318. The report also noted "Squat 20% of full, effort incomplete." *Id*. Dr. Balderman also noted incomplete effort during Plaintiff's lumbar spine flexion exercises. Tr. 319. Despite Plaintiff's incomplete effort, Dr. Balderman recorded full lumbar extension, lateral flexion, and rotary movement, as well as negative straight leg raising. *Id*. Based on the report, the ALJ properly noted that Plaintiff displayed some symptom magnification during the examination. Tr. 19.

Plaintiff's argument that Dr. Balderman's opinion was vague, and the ALJ "conducted an improper selective reading of the evidence" (ECF No. 11-1 at 21-22) is without merit. It is the ALJ's duty to assess the claimant's RFC based on the record as a whole. *See* 20 C.F.R. § 404.1545; *Trepanier v. Comm'r of Soc. Sec. Admin.*, 752 F. App'x 75, 79 (2d Cir. 2018) ("Even where the ALJ's determination does not perfectly correspond with any of the opinions of medical sources cited in his decision, however, the ALJ was entitled to weigh all of the evidence available to make a residual functional capacity finding that was consistent with the record as a whole."). In this case, accounting for those findings in light of the record as a whole, the ALJ reasonably addressed Dr. Balderman's assessment of mild to moderate limitations in the RFC by restricting Plaintiff to the range of light work described above, with postural and environmental limitations that included no exposure to uneven terrain. Tr. 17. Thus, the Court finds no error in the ALJ's assignment of some weight to Dr. Balderman's opinion.

Finally, Plaintiff challenges the ALJ's assignment of "little weight" to the opinion of Dr. Ritter and Shane Griffin PA-C ("Mr. Griffin"), from the Erie County Medical Center ("ECMC") Orthopedics Department. Tr. 350. On August 17, 2015, Dr. Ritter and Mr. Griffin[5] treated Plaintiff and completed a form consisting of three check boxes, stating Plaintiff was able to return to work with restrictions of work four hours per day, limited driving, and lifting less than 50 lbs. *Id*. The ALJ gave the opinion little weight, because it was after the date last insured[6] and "contains no rationale for the limits assessed." Tr. 19. The ALJ's analysis is consistent with agency regulations, which provide that "[t]he better an explanation a source provides for an opinion, the more weight we will give that opinion." 20 C.F.R. § 404.1527(c)(3); *see also Camille v. Colvin*, 652 F. App'x 25, 27 (2d Cir. 2016) (quoting same). Nevertheless, consistent with the restrictions indicated in the opinion, the ALJ limited Plaintiff to only occasional commercial driving and to lifting no more than 20 pounds at a time. Tr. 17, 350.

The only other limitation in the opinion is the finding that Plaintiff was limited to working four hours per day. Tr. 19, 350. That restriction, like the rest of the opinion, is entirely unexplained and unsupported. Moreover, under agency regulations, an opinion that a claimant is unable to work is entitled to no deference by the ALJ, as that question involves a dispositive issue reserved to the Commissioner. 20 C.F.R. § 404.1527(d); *see Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) ("[S]ome kinds of findings—including the ultimate finding of whether a claimant is disabled and cannot work—are 'reserved to the Commissioner.'"). Plaintiff makes no meaningful attempt to explain how the opinion merited greater weight. Accordingly, Plaintiff's argument is without

---

[5] As the Commissioner notes, although the form has a stamp bearing Dr. Ritter's name, only Mr. Griffin, a physician assistant, signed it. *See* ECF No. 13-1 at 15 (citing Tr. 350). The Court will, nevertheless, refer to the opinion as that of Dr. Ritter.

[6] As noted above, the Appeals Council modified Plaintiff's last date of insurance from March 31, 2015, to June 30, 2015; thus, the form was completed not long after the date last insured, as corrected by the Appeals Council after the ALJ's decision. Tr. 1-10.

merit, and the Court finds no error with respect to the weight assigned to the opinion of Dr. Ritter and Mr. Griffin.

### III. The ALJ Properly Assessed Plaintiff's Credibility.

Plaintiff's third point of error is that the ALJ failed to properly determine Plaintiff's credibility. "It is well settled that a claimant's subjective evidence of pain is entitled to great weight where . . . it is supported by objective medical evidence." *Harvey* 2008 WL 4517809, at *11 (citing *Simmons v. U.S. R.R. Retirement Bd.*, 982 F.2d 49, 56 (2d Cir.1992) (citations omitted)). "Objective medical evidence is evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques." *Id.* (internal citations omitted).

An ALJ may properly reject subjective complaints after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons for the court to determine whether such is made with sufficient specificity to enable the court to determine whether such is supported by substantial evidence. *Lewis v. Apfel*, 62 F.Supp.2d 648, 651 (N.D.N.Y. April 22, 1999) (quoting *Gallardo v. Apfel*, No. 96–CV–9435, 1999 WL 185253, at *5 (S.D.N.Y. Mar. 25, 1999)). To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record. 20 C.F.R. § 404.1529. *See Foster v. Callahan*, No. 96–CV–1858, 1998 WL 106231, at *5 (N.D.N.Y. Mar. 3, 1998) ("Social Security regulations describe a two-step process for evaluating a claimant's symptoms, including pain."). First, the ALJ must determine, based on the claimant's objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain and other symptoms alleged[.]" 20 C.F.R. § 404.1529(a). Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the

intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which they limit the claimant's capacity to work. 20 C.F.R. § 404.1529(c).

Plaintiff essentially argues that the ALJ did not explain why Plaintiff's statements concerning the intensity, persistence and limiting effect of her symptoms were not entirely consistent with the medical evidence and other evidence of record. *See* ECF No. 11-1 at 27-30. The Court disagrees. To the contrary, the ALJ's assessment is well supported by the record. Plaintiff simply chooses to ignore the factors the ALJ cited in reaching his conclusion. For example, the ALJ noted that x-rays following Plaintiff's sprained ankle in May 2013 showed no acute fracture. Tr. 18, 300. Moreover, an MRI showed no significant findings and was interpreted as normal. Tr, 18, 306. Imaging in October 2015 and August 2016 showed normal examination of the right foot, no bony abnormality, and no arthritic changes. Tr. 18, 378-79. While the ALJ noted that some examinations revealed antalgic gait and right ankle tenderness (Tr. 18, 325, 339, 360), other examinations, including Plaintiff's consultative exam, noted normal gait (Tr. 318, 333, 368). As discussed above, the consultative examiner also noted incomplete effort and symptom magnification. Tr. 19, 318. This district has found evidence of symptom exaggeration to weigh against allegations of disability. *See Picone v. Colvin*, No. 13-CV-347-JTC, 2015 WL 5126076, at *8-9 (W.D.N.Y. Sept. 1, 2015). Thus, the ALJ properly found that Plaintiff's statements about her allegedly disabling right ankle, right foot, and back impairment were inconsistent with the record. Tr. 18. The limitation noted above as to moderate limitation on prolonged walking and mild limitation as to repetitive lifting and bending is consistent with the ALJ's assessment that Plaintiff could do light work. *See Amons v. Astrue*, 617 F.Supp. 2d 173,176 (W.D.N.Y. 2009); *Carpenter v. Astrue*, 2010 WL 2541222*5 (W.D.N.Y).

The ALJ also discussed Plaintiff's work history showing sporadic and inconsistent earnings, including several years prior to the relevant period, wherein Plaintiff reported no wages or only wages below the level of substantial gainful activity. Tr. 28, 204. It is proper for an ALJ to consider a claimant's poor work history in evaluating her allegations of disability. *Schaal v. Chater*, 134 F.3d 496, 502 (2d Cir. 1998); 20 C.F.R. § 404.1529(c)(3) ("We will consider all of the evidence presented, including information about your prior work record . . ."). Plaintiff also argues the ALJ improperly construed her activities and evidence using selective reading and lay opinion to reach his credibility findings. Although the ALJ is "required to take [Plaintiff's] reports of pain and other limitations into account" when making the RFC determination, he is "not required to accept [Plaintiff's] subjective complaints without question." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir.2010) (internal citations omitted). Instead, the ALJ has discretion to weigh Plaintiff's credibility "in light of the other evidence in the record." *Id*. (citation omitted). Here, the ALJ did just that. Although Plaintiff attacks the ALJ's credibility assessment, she fails to address any of the above-referenced factors and fails to explain the inconsistencies between her subjective complaints and the medical evidence and other evidence in the record.

Having reviewed the administrative record in its entirety, the Court finds that the ALJ applied the correct legal standard in assessing Plaintiff's credibility. The ALJ cited instances in the record that would detract from Plaintiff's credibility, such as an incomplete work record, symptom magnification, and normal imaging studies. Tr. 18-19. Later medical records from her doctors indicated only mild swelling of the ankle shortly after the sprain (Tr. 300); relatively innocuous imaging studies (Tr. 314,315, 378-79); normal gait (Tr. 318, 333, 368); improving pain (Tr. 334); no or decreased swelling and tenderness in the right ankle (Tr. 335, 356, 360); no joint pain and no morning stiffness (Tr. 366); and surgery on the ankle not recommended (Tr. 357). In the end

analysis, it is the function of the ALJ, not the courts, to determine the credibility of the claimant's allegation. Because the ALJ has the benefit of directly observing a claimant's demeanor and "other indicia of credibility," the ALJ's credibility assessment is generally entitled to deference. *Nesiba O. v. Comm'r of Soc. Sec.*, No. 5:17-CV-0931 (TWD), 2019 WL 464882, at *8 (N.D.N.Y. Feb. 6, 2019) (internal citations omitted). Based on the foregoing, the Court finds the ALJ's credibility determination is supported by substantial evidence.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 11) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 13) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE